461 A.2d 814

**Judy D. HARVEY, Administratrix of the Estate of Richard L. Harvey, Deceased and Judy D. Harvey, In her own right, Appellant,**

**v.**

**David Lee HASSINGER.**

Superior Court of Pennsylvania.

Argued May 11, 1982.

Filed June 3, 1983.

Jack E. Feinberg, Philadelphia, for appellant.

Joseph W. Mullin, Huntingdon, for appellee.

Before CAVANAUGH, CIRILLO and HOFFMAN, JJ.

CAVANAUGH, Judge:

This case involved a trespass action for wrongful death and survival action arising out of the death of Richard L.

Harvey who was killed when struck by an automobile which was driven by the appellee, David Lee Hassinger. Mr. Hassinger had been drinking heavily on November 8, 1975. The testimony established that he consumed a pint of liquor and a quantity of beer in excess of twenty quarts. While in this intoxicated condition he attempted to operate his motor vehicle and in the process drove up on the sidewalk and struck Mr. Harvey. As a result of the injuries received in the accident which occurred on the early morning of November 9, 1975, Mr. Harvey died.

Judy D. Harvey, as administratrix of her deceased husband's estate and in her own right commenced an action in wrongful death and a survival action against appellee. Trial was held before Terrizzi, J. and a jury and a verdict was entered against the appellee in the amount of $45,000.00 in the wrongful death action and for $250,000.00 in the survival action. Punitive damages were also awarded in the amount of $10,000.00. Appellee filed motions for new trial and for judgment non obstante verdicto and his motion for new trial was granted by Taylor, P.J. An appeal has been taken to this court from the order awarding a new trial.

■ The first issue is whether punitive damages were properly awarded by the jury in this case. With respect to the wrongful death action it is clear that punitive damages are not allowed. The Wrongful Death Act, Act of April 26, 1855 P.L. 309, 12 P.S. § 1602 sets forth the persons entitled to recover damages. As pointed out in the early case of *Pennsylvania Railroad Company v. Vandever*, 36 Pa. 298, 304 (1860): *"The sum to be recovered* [under Pennsylvania's Wrongful Death Act] *is, therefore, the pecuniary loss which the plaintiffs have suffered* from the death of their relative; and this is made more certain by the provision, that no other relative, and of course no other person, than those named, can recover anything ..." (Emphasis added). *See also, Pennsylvania Railroad Company v. Henderson,* 51 Pa. 315 (1865); *Palmer v. Philadelphia, Baltimore and Washington Railroad Company,* 218 Pa. 114, 66 A. 1127 (1907). The question as to whether punitive damages are

permitted in a wrongful death action is set to rest in *Pennsylvania Railroad Company v. Henderson,* 51 Pa. 315, 323 (1865) wherein it is stated that damages recoverable under Lord Campbell's Act, the forerunner of Pennsylvania's Wrongful Death Act do "not include the loss or suffering of the deceased, nor does it include the mental suffering of the survivor occasioned by such death, and *it excludes all questions of exemplary damages."* (Emphasis added).

A more difficult question is whether punitive damages are allowed under The Survival Act. The law pertaining to survival actions in effect at the time of this accident on November 9, 1975, is found in the Act of June 30, 1972, P.L. 508 No. 164, 20 P.S. § 3371 and provides:

§ 3371. **Actions which survive**

All causes of action or proceedings, real or personal, except actions for slander or libel, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.

In a decision prior to the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101, et seq., the federal district court allowed punitive damages where reprehensible conduct resulted in death. *See Hennigan v. Atlantic Refining Company,* 282 F.Supp. 667 (E.D.Pa.1967), affirmed 400 F.2d 857 (3 Cir. 1968). The court stated at 282 F.Supp. at 683 "No mention is made [in The Survival Act] of damages per se. We see no reason to read into the act a limitation on the nature or amount of recovery. Certainly, the legislature was aware that the courts of Pennsylvania recognized punitive damages in an appropriate case, when they passed the act." In another pre-no-fault decision, a trial court considered the question of punitive damages in a survival action. In *Cramer v. Noonan Engineering Company,* 86 York L.R. 160 (1973) the plaintiff brought only a survival action seeking compensatory damages and in a separate count sought punitive damages. Parenthetically, it is noted in our case that the appellant in her trespass action for wrongful death

and survival action did not seek punitive damages in the complaint. In the *Cramer* case the lower court dismissed the defendant's preliminary objections to the complaint and held that while punitive damages are excluded in a wrongful death action, they may be claimed in survival actions. The court stated at 86 York L.R. 162:

> In survival actions, however, being causes which the decedent could have asserted on his own behalf but for his death for injuries and loss inflicted *upon him,* we hold, as did *Hennigan,* that there appears to be no basis in precedent or in logic to exclude the punitive damages which the decedent could have sought had he not died.

The appellant contends that the jury properly awarded punitive damages in the instant case and relies on *Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157 (1970). That case was also decided prior to the effective date of the Pennsylvania No-Fault Motor Vehicle Insurance Act, which became effective on July 19, 1975. In the *Focht* case it was determined that punitive damages were permissible when the act was performed "with reckless indifference as well as with bad motive." 217 Pa.Super. 38, 268 A.2d 159.

In a survival action the decedent's estate may recover punitive damages only if the decedent could have recovered them had he lived. As pointed out in *McClinton v. White,* 285 Pa.Super. 271, 277, 427 A.2d 218, 221 (1981):

> A survival action, unlike a wrongful death action, is not a new cause of action, but, "merely continues in his personal representative the right of action which accrued to the deceased at common law ...." *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659, 661 (1942). In a survival action, the cause of action arises out of the injury, not out of the death. The estate is substituted for the decedent, and its recovery is based upon the rights of action which were possessed by the decedent at his death.

To determine whether the decedent could have recovered punitive damages had he lived we must turn to the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq. which

was in effect at the time of the accident in this case. The Act in Section 301 abolishes tort liability for injuries except in certain ennumerated situations. *See* 40 P.S. § 1009.301.[1] The case of *Reimer v. Delisio,* 296 Pa.Super. 205, 210, 442 A.2d 731, 733 (1982) has placed beyond peradventure the rule that punitive damages are not recoverable under the No-Fault Act for gross negligence or reckless disregard as the court stated therein:

> We are persuaded that the initial clause of Section 1009.301 of our No-Fault Act explicitly abolished all causes of action falling within the ambit of the Act; *and, consequently abolished punitive damages for gross negligence, reckless disregard, and the like.* Subsection (a) of that Section provides:
>
>> *Partial Abolition.*—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance and use of a motor vehicle, except that. . . .
>
> There follow exceptions which do not specifically refer to liability for gross negligence, although intentional conduct is so excepted.[1]
>
> We are not persuaded, either, that punitive damages for recklessness or gross negligence are implicitly preserved in subsections (a)(4) or (a)(5) of Section 301 of the Act. Subsection (a)(4) provides:
>
>> A person remains liable for *loss* which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act. . . . " [Emphasis added.]

(Emphasis added).

---

1. The no-fault act also provides in 40 P.S. § 1009.301(a)(5) as follows:
 (5) A person remains liable for damages for non-economic detriment if the accident results in:
 (A) death or serious and permanent injury; or
 In this case the accident resulted in death so that appellee would remain liable for non-economic detriment. However, Section 103 of the act defines non-economic detriment, and expressly provides that "The term does not include punitive or exemplary damages." *See also Reimer v. Delisio, supra.*

In the instant trespass action there is no indication that the appellee engaged in intentional misconduct as far as causing the death of Mr. Harvey. The appellant contends with reference to punitive damages that they are proper where "an individual's conduct is grossly negligent and whose conduct is outrageous."

The trial court charged on the question of punitive damages as follows:

If you find that the Defendant's conduct was a substantial factor in bringing about the harm to the Plaintiff's decedent and if you find that the conduct of the Defendant was outrageous, you may award punitive damages as well as compensatory damages about which we have just talked, in order to punish the Defendant for his conduct and to deter the Defendant and others from the commission of like acts in the future.

A person's conduct is outrageous when he acts with a bad motive or when he acts with reckless indifference to the interests of other people.

■ Counsel for the appellee specifically objected to this portion of the charge on punitive damages and the issue is preserved for appeal. It is not proper to award punitive damages in a survival action where the claim for such damages is based on the gross negligence of the defendant. The court erred in charging on punitive damages and the jury's verdict as to punitive damages must be set aside.

■ The second issue is whether appellant's closing argument to the jury contained statements that were so unfair, inflamatory and prejudicial as to require a new trial. Counsel for the appellant referred to two defense witnesses, Mrs. Springer and Debbie Bryner, who were sequestered during trial. Referring to Mrs. Springer, the mother of the plaintiff's decedent, he stated:

she didn't know or do that. She is out talking with Debby Bryner for two days and everybody else is back that way. She's back this way with her and nobody is in

cohorts [cohoots] She sued Debby Bryner somehow or another. Her other lawyer is not here.

Counsel for the appellant further stated:

She [referring to Debby Bryner] was a defendant in another suit and she is back there with the lady [referring to Mrs. Springer] and they discontinued that suit and all kinds of shenanigans going on and they don't have any interest?

These remarks are so vague as not to require a new trial. The reference to "cahoots" and "shenanigans" should not have been made but in the context of this prolonged trial it does not compel us to find such prejudice that appellee did not receive a fair trial.

In addition, counsel for appellant stated:

Here is a man who got himself so liquored up that it is remarkable that he could stand on his feet and put one foot in front of the other. He got into a car and it is incredible he could even turn the key on. He drove it at Hell's bent, killed somebody, fled the scene of the accident, was so bloody drunk he didn't even know he had an accident until somebody told him an hour later."

And the defense would attempt to bastardize that relationship. That makes sense. If somebody is going to get liquored up and kill somebody it makes sense that the same person would attempt to do that. Don't try me. I only got drunk and killed somebody.

. . . . .

"and didn't know what he was doing or where he was going; come across here and murdered Mr. Harvey, who was on the pavement where he had a right to be; then didn't have enough sense or good judgment to get out of his car and see what he did and proceeded to keep on going, running over him some more so that he came slithering out from the back wheel of the car like a piece of thing that you might put under your wheel to get off the ice."

 Referring to the defendant in a civil case as one who "murdered" the decedent is clearly improper. However, the term was not used in the technical sense of defining a crime but rather in the broader sense of indicating outrageous conduct. Appellee denied responsibility and therefore appellant was put to the burden of proving the appellee's liability although no defense was offered as to liability. The evidence as to the accident and the consumption of alcohol preceding it painted a picture of appalling neglect. While it was improper for appellant's counsel to refer to the appellee as having "murdered" the decedent we cannot say that in the context of this trial that the remark was so prejudicial as to require a new trial.[2] Counsel for the appellee objected to the remark in the court below as he did to all of the remarks which are now claimed to be improper and he moved for a mistrial. The withdrawal of a juror for improper remarks is within the discretion of the trial judge. *Piwoz v. Iannacone*, 406 Pa. 588, 178 A.2d 707 (1962); *Easter v. Hancock*, 237 Pa.Super. 31, 346 A.2d 323 (1975). The trial court denied the appellee's motion for mistrial and it was not the trial court that granted his motion for a new trial but rather, his successor. The grant of a new trial for improper remarks is within the discretion of the trial judge. *Stevenson v. Pennsylvania Sports and*

**2.** In *Smith v. Evans*, 421 Pa. 247, 219 A.2d 310 (1966) the Supreme Court was faced with the problem of an intemperate argument to the jury. The court stated at 421 Pa. 250, 251, 219 A.2d 312:

The defendant seeks a new trial on the further ground that the Trial Court erred in not withdrawing a juror and declaring a mistrial because of alleged inflammatory remarks by plaintiff's counsel in his address to the jury. We have noted the excerpts from the speech to which the defendant's counsel makes particular objection and we do not find that they would have warranted the truncation of the trial with an inevitable new trial. It is true that in some instances plaintiff's counsel went to the very brink of perfervid speech which would appeal to the emotions of the jurors, imperilling the derailing of judgment and the substitution therefor of vindictive reprisal against the defendants for the breach of the law with which they were being charged. We are satisfied, however, that plaintiff's counsel did not actually take the plunge over the cliff of irretrievable error and the judge did not abuse his discretion in not taking the action which would have necessitated the trial of this case for a third time.

*Enterprise, Inc.,* 372 Pa. 157, 93 A.2d 236 (1953). Further, an appellate court's "review of the grant of a new trial is limited to cases of gross abuse of discretion *by the trial judge* or the application of erroneous rules of law by the trial court." *Atene v. Lawrence,* 456 Pa. 541, 318 A.2d 695, 697 (1974). (Emphasis added). *See also, Canery v. Southeastern Pennsylvania Transportation Authority,* 267 Pa. Super. 382, 406 A.2d 1093 (1979).

■ The law expressly grants broad discretion *to the trial judge* as he has referred the courtroom battle and has a familiarity with the proceedings that cannot be achieved by one who peruses the printed page. This is not to say that in this case the successor to the trial judge did not have the discretion to grant a new trial, but his discretion would be no greater than that of an appellate court, as he suffered the same disability that we do, namely, our review is limited to the printed record.

■ The final part of appellant's argument that the appellee complained about in the court below was as follows:

> "Juries sometimes start looking at numbers and, admittedly, they are big numbers and they worry. Oh, that's not your province to do. We lawyers will work it out to get the verdict correct in the case. You don't have to be concerned about anything. The only thing you have to be concerned about is whether it is fair and just and reasonable and reasonable, by the way, doesn't mean cheap. It's reasonable in a sense of what is fair. Don't be concerned where it is to come from and all that. That's a problem for lawyers and I am sure we will work it out."

It is improper to tell the jury that the lawyers will work things out and correct the verdict. It is also improper to argue to the jury that they should not be concerned about "where it [presumably the money to pay the verdict] is to come from and all that." However these remarks were ambiguous and no complaint has been made by appellee concerning the amount of compensatory damages. Fur-

ther, appellant's counsel did admonish the jury to be fair, just and reasonable in awarding a verdict.

The trial judge refused the appellee's motion for a mistrial as he believed the remarks did not warrant a new trial. As pointed out in *Abrams v. Philadelphia Suburban Transportation Company,* 438 Pa. 115, 119, 264 A.2d 702, 704 (1970):

> Whether a lawyer's argument to the jury transgresses the bounds of legitimate advocacy is primarily for the discretion of the trial judge, and an appellate court will not interfere with the exercise of this discretion, unless the record manifests that it was clearly abused.

While we do not condone the parts of the argument which were objected to by the appellee, the trial court did not commit reversible error in refusing to grant a mistrial. The order granting a new trial is reversed and the verdict for punitive damages in the amount of $10,000.00 is stricken.

Affirmed in part and reversed in part.

CIRILLO, J., concurs in result.