Shirley WANG, Administratrix of the Estate of Dean Chou, Deceased, and Kathryn Adelstein, Plaintiffs,

v.

Francis MARZIANI, and A to Z Transportation, Inc., Defendants.

No. 93 Civ. 2529 (SWK).

United States District Court, S.D. New York.

April 25, 1995.

Newman, O'Malley & Epstein by Lawrence Epstein, David J. Levy, New York City, for plaintiff Shirley Wang.

Jones Hirsch Connors & Bull by Thomas G. Vaughan, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this diversity action arising out of a car accident on the Pennsylvania Turnpike (the "Turnpike"), defendants Francis Marziani ("Marziani") and A to Z Transportation, Inc. ("A to Z Transportation") move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment dismissing plaintiff Shirley Wang's ("Wang") punitive damages claim. For the reasons that follow, defendants' motion is granted in part and denied in part.

### BACKGROUND

#### I. The Accident

In 1992, plaintiff Kathryn Adelstein ("Adelstein")[1] and Dean Chou ("Chou"), domiciliaries of New Jersey and New York, respectively, were employed by a computer company entitled Computer Systems Repair ("CSR"). On October 21, 1992, Adelstein and Chou returned from a work assignment via the Turnpike, traveling in a van owned by CSR. Adelstein drove the vehicle and Chou sat in the front passenger seat as they proceeded eastbound on the Turnpike.

At the same time, Marziani, a truck driver employed by A to Z Transportation, was operating a tractor-trailer westbound on the Turnpike en route to Illinois to deliver a load of cargo. At approximately 10:30 p.m., portions of the trailer broke apart from the tractor and careened across the highway divider into the eastbound lanes. The trailer crashed into the van driven by Adelstein and Chou, who were approaching from the opposite direction at the moment that Marziani lost control of his truck. The accident caused severe permanent injuries to Adelstein and led to Chou's death.

#### II. The Investigation

Shortly after the accident, Police Trooper Thomas Lett ("Lett"), a motor carrier safety inspector with the Pennsylvania state police, arrived at the crash scene to investigate the cause of the accident. Lett determined that Marziani had proceeded through a right-hand curve on the highway at an excessive speed, causing a shift in the cargo which rendered the tractor-trailer uncontrollable. *See* Deposition of Thomas Lett, taken on Jan. 25, 1994, annexed to the Affirmation in Opposition of Lawrence Epstein, sworn to on Jan. 25, 1995 (the "Epstein Aff."), as Exh. "F," at 12. Based on a review of the damage and interviews conducted at the accident scene, Lett estimated that Marziani had driven through the turn at sixty-five miles per hour, ten miles per hour faster than the posted speed limit. *See id.* at 13.

As part of his investigation, Lett also retrieved receipts from Marziani's tractor to calculate the number of hours Marziani had logged on the highway during the week leading up to the accident. *See id.* at 31. After comparing the receipts to Marziani's time log, Lett concluded that Marziani had falsified his records to indicate fewer hours than he actually had driven that week. *See id.* Specifically, Lett found that Marziani had driven more than seventy hours during the eight-day period preceding the accident. As a result of the investigation, Marziani was convicted of careless driving and maintaining an inaccurate duty log. *See* letter from District Justice Brenda M. Knepper to plaintiff's counsel dated April 5, 1993, annexed to the Epstein Aff. as Exh. "G."

#### III. The Present Action

On April 19, 1993, Wang initiated the present action by filing a complaint on Chou's behalf in her capacity as the administratrix of Chou's estate. Wang alleges that Marziani had been driving too many hours during the week preceding the crash and had falsified his duty log in contravention of federal

---

1. Adelstein joined the present action by stipulation dated October 5, 1994.

safety regulations. Wang alleges further that Marziani violated federal safety regulations in failing to secure his cargo before entering the highway. With respect to A to Z Transportation, Wang claims that its practice of paying its drivers based on the number of hours logged contributed to the accident by encouraging Marziani to exceed federally-mandated driving time limitations. The complaint seeks compensatory damages for: (1) wrongful death (First Claim for Relief); and (2) Chou's pain and suffering (Second Claim for Relief).

On September 30, 1994, Wang filed an amended complaint seeking punitive damages on her two claims. Specifically, Wang seeks punitive damages in the amount of $10,000,000 for each claim on the ground that defendants acted with "reckless and heedless disregard" for the public by failing to abide by federal safety regulations. *See* Amended Complaint at ¶¶ 22, 28.

Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment dismissing Wang's punitive damage claims. Defendants argue that Pennsylvania state law applies to Wang's claims. They argue further that (1) under that state's law, plaintiffs are not entitled to punitive damages in a wrongful death action; and (2) with respect to Wang's request for punitive damages based on the pain and suffering claim, their conduct was not sufficiently outrageous to warrant such damages as a matter of law. In opposition, Wang contends that (1) New York law, which permits punitive damages in wrongful death actions, applies to her claims; (2) alternatively, punitive damages are permitted in wrongful death claims under Pennsylvania law; and (3) with respect to the pain and suffering claim, defendants' conduct raises an issue of material fact whether punitive damages should be imposed.

## DISCUSSION

### I. Choice of Law

■ As a threshold matter, the Court must determine whether Pennsylvania or New York state law applies to plaintiff's claims. A federal court in a diversity case must look to the choice of law rules of the state in which it sits to resolve conflict of law issues. *AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 269–70 (2d Cir.1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)); *G.D. Searle & Co. v. Medicore Communications, Inc.,* 843 F.Supp. 895, 905 n. 5 (S.D.N.Y.1994). The Court therefore must examine New York's choice of law principles to determine whether to apply Pennsylvania or New York law to Wang's claims.

■ For tort claims, New York courts adopt an "interest analysis" test, requiring application of the law of the state with the greatest interest in the outcome of the litigation. *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985). The significant factors to be considered in tort actions are "almost exclusively, the parties' domiciles and the locus of the tort." *Id.* Where the conflict of laws involves standards of conduct, the locus jurisdiction is predominant because of the state's "interest in affecting the conduct of those who act within the jurisdiction and of a reliance interest on the part of actors whose conduct is at issue." *AroChem Int'l, Inc. v. Buirkle,* 968 F.2d at 270 (citing *Schultz v. Boy Scouts of Am., Inc.,* 491 N.Y.S.2d at 96, 480 N.E.2d at 685). Where the laws in conflict concern allocation of losses, however, the parties' domicile takes precedence because of the domicile jurisdiction's interest in determining the remedies for tortious conduct involving its own residents. *Schultz v. Boy Scouts of Am., Inc.,* 491 N.Y.S.2d at 96, 480 N.E.2d at 685.

■ In the present case, the Court finds that Pennsylvania has the greater interest in the outcome of the litigation. As the imposition of punitive damages is a conduct-regulating rather than a loss-allocating rule in nature, *see Saxe v. Thompson Medical Co.,* No. 83 Civ. 8290, 1987 WL 7362, at *1, 1987 U.S.Dist. LEXIS 1176, at *3 (S.D.N.Y. Feb. 20, 1987), the locus of the tort is the primary consideration. While it is true that a New York domiciliary is a party in the litigation, this factor is outweighed by Pennsylvania's overwhelming interest in regulating the con-

duct within its borders. Accordingly, Pennsylvania law applies to Wang's claims.

## II. Punitive Damages

### A. Wrongful Death Claim

■ Having concluded that Pennsylvania law applies, the Court next must determine whether a plaintiff in a wrongful death action may recover punitive damages under Pennsylvania law. For the reasons that follow, the Court finds that no such recovery is available.

The only Pennsylvania state court that appears to have squarely addressed this issue is the Pennsylvania Superior Court in *Harvey v. Hassinger*, 315 Pa.Super. 97, 461 A.2d 814 (1983). In *Harvey*, plaintiff's decedent was struck and killed by an automobile operated by the defendant while under the influence of alcohol. *Id.* 461 A.2d at 815. Addressing the issue whether the trial court had properly awarded punitive damages on plaintiff's claims, the court held that "[w]ith respect to the wrongful death action it is clear that punitive damages are not allowed." *Id.* In reaching this conclusion, the court relied upon well-established case law dating back to the Pennsylvania Supreme Court's decision in *Pennsylvania R.R. Co. v. Henderson*, 51 Pa. 315, 323 (1866), which held that punitive damages are not available for wrongful death claims under Pennsylvania's predecessor wrongful death statute. *Harvey v. Hassinger*, 461 A.2d at 815–16.

The rule that punitive damages are not available in wrongful death actions has been adhered to by at least two Pennsylvania federal district courts. In *Estate of Cooper v. Leamer*, 705 F.Supp. 1081, 1085 (M.D.Pa. 1989) (citing *Harvey v. Hassinger*, 461 A.2d at 815), the court granted summary judgment to defendants on plaintiff's punitive damage claim on the ground that there is "no right ... to recover punitive damages in a wrongful death action" under Pennsylvania law. Similarly, in *Skell v. Crown Am. Corp.*, 670 F.Supp. 153, 154 (W.D.Pa.1987) (citing *Harvey v. Hassinger*, 461 A.2d at 815), the

court held that, although punitive damages may be awarded in a survivorship action, such relief may not be predicated on a wrongful death claim.

■ In an attempt to circumvent the rule prohibiting punitive damages in Pennsylvania wrongful death cases, Wang erroneously relies upon *Burke v. Maassen*, 904 F.2d 178 (3d Cir.1990). In *Burke*, defendants appealed a punitive damage award in an action based on the Pennsylvania Survivor Act and the Pennsylvania Wrongful Death Act. *Id.* at 180. The Third Circuit Court of Appeals determined that punitive damages could be awarded upon a showing that the defendant had exhibited a "reckless indifference to the rights of others." *Id.* at 181. This statement, however, did not refer to plaintiff's wrongful death claim, but rather to his survival claim pursuant to the Pennsylvania Survival Act. *Id.*[2] Although perhaps unclear in the Court's opinion, the Court did note that punitive damages against one defendant were awarded pursuant to the Pennsylvania Survival Act. *Id.* at 181 n. 3. As for the punitive damages award against the second defendant, the Court did not specify whether these damages were based on the Wrongful Death Act or the Survival Act. Nonetheless, it does not appear that the Court intended to overrule longstanding Pennsylvania state law in the absence of a new statute or an intervening change in judicial interpretation by the Pennsylvania courts.

Wang's reliance on *Zygmuntowicz v. Hospitality Invs., Inc.*, 151 F.R.D. 53 (E.D.Pa. 1993), is similarly misplaced. In *Zygmuntowicz*, plaintiffs moved to amend their complaint to include a claim for punitive damages in their survivorship and wrongful death action. *Id.* at 54. In granting plaintiffs' motion, the court stated that "Pennsylvania allows for punitive damages in a wrongful death action where a party can show that the opposition knew that his action may significantly endanger others and then deliberately proceeded in disregard of that risk." *Id.*

---

**2.** It is well-settled that, under Pennsylvania law, plaintiffs in survivor cases may receive punitive damages. *See, e.g., Harvey v. Hassinger*, 461 A.2d at 816 ("In survival actions, ... there appears to

be no basis in precedent or logic to exclude punitive damages which the decedent could have sought had he not died.").

(citing *Burke v. Maassen,* 904 F.2d 178, 183 (3d Cir.1990)). The Court finds this statement to be an incorrect statement of Pennsylvania law. Although the court reached the correct result in that punitive damages were available under plaintiffs' survivorship claim, it appears that the *Zygmuntowicz* court mistakenly read *Burke* to permit punitive damages under Pennsylvania's Wrongful Death Act. Accordingly, as the Court finds that punitive damages are not available in wrongful death actions under Pennsylvania law, defendants' motion for summary judgment dismissing Wang's punitive damages claim on the First Claim for Relief is granted.

### B. Pain and Suffering Claim

■ While punitive damages are unavailable on Wang's wrongful death claim, it is undisputed that such damages may be awarded on the pain and suffering claim. Defendants argue, however, that their conduct does not warrant the imposition of punitive damages as a matter of law. The Court finds this contention to be without merit.

■ Pennsylvania courts have adopted the standard set forth in the Restatement of Torts (Second) for determining when punitive damages may be awarded. *Martin v. Johns–Manville Corp.,* 494 A.2d 1088, 1096 (1985); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747 (1984). Under this standard, punitive damages are appropriate where the conduct is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2) (1979) (quoted in *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800, 803 (1989); *Martin v. Johns–Manville Corp.,* 494 A.2d at 1096; *Feld v. Merriam,* 485 A.2d at 747). A plaintiff therefore must establish that the actor realized the risk and yet acted in conscious disregard or indifference to it. *Martin v. Johns–Manville Corp.,* 494 A.2d at 1097. In order to determine whether a defendant's conduct satisfies this standard, the trier of fact may consider "the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."

*Id.* at 1096. Punitive damages may not be awarded on the basis of a defendant's inadvertence, mistake or error of judgment. *Id.* at 1097.

■ In the case at hand, the Court finds that an issue of fact exists whether defendants' conduct warrants the imposition of punitive damages. *See Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986) (stating that the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment). With respect to Marziani, a reasonable jury could conclude that logging more than seventy hours during an eight-day period, falsifying the duty log and failing to secure all cargo, all in violation of Department of Transportation safety regulations, *see* 49 C.F.R. §§ 393.100, 395.3(b)(2) & 395.8(e) (1992), constitute "reckless indifference to the rights of others." *See* Restatement (Second) of Torts § 908(2) (1979). A reasonable jury similarly could find that the imposition of punitive damages against A to Z Transportation is warranted as it failed to monitor Marziani's conduct and encouraged him to exceed federally-proscribed driving time limits.

The holding in *Burke v. Maassen,* 904 F.2d at 183–84, does not compel the opposite result. In *Burke,* the Court overturned a jury's award of punitive damages against a tractor-trailer driver who drove too many hours in violation of federal safety regulations. *Id.* In that case, however, the Court made its finding after trial, concluding that the plaintiff had failed to establish that the driver consciously appreciated the risk he had created. *Id.* at 183. Here, in contrast, Wang has not had the opportunity to offer her proof at trial. Accordingly, the Court is unable to determine as a matter of law that she cannot meet the standard for establishing a punitive damages claim. *See Lindsay v. Kvortek,* 865 F.Supp. 264, 268–69 (W.D.Pa. 1994) (denying defendants' motion to dismiss plaintiffs' punitive damages claim as the court could "not assume that plaintiffs will be unable to present any evidence to support a claim for punitive damages"). Accordingly, defendants' motion for summary judgment

dismissing the punitive damages claim on the Second Claim for Relief is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment dismissing plaintiff's punitive damages claim is granted with respect to the First Claim for Relief and denied with respect to the Second Claim for Relief. The parties are directed to appear at a pre-trial conference on Wednesday, May 17, 1995 at 2:00 p.m.

SO ORDERED.