**Diggs v. Susquehanna Center
for Nursing and Rehabilitation**

374

*Andrew K. Stutzman,* for plaintiff.

*Evan Black,* for Julie Larson M.D. and Harrisburg Family Practice Center.

*Kenneth A. Rapp,* for Susquehanna Center for Nursing and Rehabilitation.

BEFORE: KLEINFELTER AND CLARK, *JJ.*

CLARK, *J.,* December 9, 1996—Before the court are the preliminary objections of defendants, Julie Larson M.D. and Harrisburg Family Practice Center. After careful consideration of the arguments presented, the preliminary objections are denied in part and granted in part in accordance with the following.

On or about July 22, 1994, plaintiff, Jane T. Turner, was admitted as a patient to defendant, Susquehanna Center for Nursing, and placed under the care and treatment of defendant, Julie Larson M.D. It is alleged that on or about August 25, 1994, a nasogastric feeding tube was placed in Mrs. Turner to assist with feedings. While this tube was connected to her, Mrs. Turner allegedly aspirated food into her lungs, causing her to develop aspiration pneumonia and ultimately expire on September 3, 1994. As a result of her death, this action was instituted by the filing of a complaint on February 29, 1996. In response thereto, defendants filed preliminary objections in the nature of a demurrer and motion to strike.

Defendants contend that Counts II and III of the complaint are comprised of several factually insufficient allegations. After a detailed review of the counts, the court has determined that paragraphs 40 and 47 contain several subparagraphs devoid of sufficient facts required by Pennsylvania Rule of Civil Procedure 1019(a). More specifically, subparagraph (a) does not provide the manner in which defendants failed to properly evaluate Mrs.

Turner's physical state. Subparagraphs (l), (m) and (n) do not indicate the ways in which defendants failed to understand and appreciate the dangerous propensity of certain situations as described therein. Additionally, subparagraphs (p) and (r) do not place defendants on notice of the manner in which they allegedly failed to provide appropriate medical care. Finally, subparagraphs (d) and (t) allege defendants failed to properly supervise the medical personnel involved with Mrs. Turner's treatment.[1] In these allegations, defendants do not describe how the supervision was improper, nor do they identify the medical personnel involved in the treatment.

Although plaintiff provides some specifics with regards to these subparagraphs, the specifics are found elsewhere in the complaint. Defendants should not be required to dig through the pleadings to make sense of vague allegations. Rule 1019(a) places the burden on the plaintiff to specifically plead the causes of action contained within the complaint. Defendants need to be aware of the basis of the plaintiff's claim in order to prepare an adequate defense. *Baker v. Rangos,* 229 Pa. Super. 333, 324 A.2d 498 (1974). Thus, defendants' preliminary objections are granted. Plaintiff is given 20 days from the date of the attached order to replead paragraphs 40 and 47 at (a), (l), (m), (n), (p), (r), (d) and (t) with the required specificity as indicated herein.

Defendants next demur to Counts II and III of the complaint and argue that plaintiff failed to state a cause of action for negligence per se. In ruling on an objection in the nature of a demurrer, all well-pleaded facts in

1. Paragraphs 40 and 47 contain two subparagraphs (d). It appears that the subsequent (d)s were mistakenly characterized. For purposes of this discussion, the court is referring to the subparagraphs which immediately precede subparagraphs (t).

the complaint and all inferences reasonably deducted therefrom must be accepted as true. *Wurth v. City of Philadelphia,* 136 Pa. Commw. 629, 584 A.2d 403 (1990). In matters where it appears with certainty that the law does not permit recovery under the allegations pleaded, a demurrer will be sustained. *Foster v. Health Market Inc.,* 146 Pa. Commw. 156, 162, 604 A.2d 1198, 1201 (1992). Preliminary objections shall be sustained only in cases that are clear and free from doubt. *Bower v. Bower,* 531 Pa. 54, 57, 611 A.2d 181, 182 (1992).

Negligence per se has been defined as "conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances . . . because it is in violation of a statute . . . ." Black's Law Dictionary 540 (6th ed. 1983). In recognition thereof, the Restatement (Second) of Torts §286 (1965) provides:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

In asserting her cause of action, plaintiff maintains that defendants violated 42 C.F.R. §483.25(g) and 42 C.F.R. §483.40 and are therefore negligent per se. She alleges that all of the requirements set forth in the Re-

statement are present. In paragraph 41, the complaint states that Mrs. Turner was a member of the class with a particular interest that was intended to be protected by 42 C.F.R. §483.25(g). Defendants invaded this interest and caused harm by failing to provide her with appropriate treatment and services to prevent aspiration pneumonia. Furthermore, in paragraph 42, the complaint states that defendants violated 42 C.F.R. §483.40 for allowing assistants, not fully licensed as physicians, to treat Mrs. Turner; and in failing to present a physician to personally examine her during the initial evaluation.

Defendants, on the other hand, argue that the above federal regulations were not enacted to protect Mrs. Turner's interests. Defendants take the position that the regulations were enacted to implement legislation contained within title XIX of the Social Security Act. The purpose of the regulations was to outline the requirements for skilled nursing facilities to participate in the Medicare and Medicaid program.[2]

In support of their position, defendants rely upon the decision of the United States District Court in *Chalfin v. Beverly Enterprises Inc.,* 741 F. Supp. 1162 (E.D. Pa. 1989). In that case, the court was called upon to determine whether a private right of action existed under title XIX of the Social Security Act. In reaching a de-

---

2. The scope of these regulations can be found in 42 C.F.R. Chapter IV—Health Care Financing, Administration, Department of Health and Human Services, part 483 Requirements for States and Long-Term Care Facilities, subpart B, section 483.1(b) Scope. The provisions of this part contain the requirements that an institution must meet in order to qualify to participate as a SNF in the Medicare program, and as a nursing facility in the Medicaid program. They serve as the basis for survey activities for the purpose of determining whether a facility meets the requirements for participation in Medicare and Medicaid.

cision, the court applied a four-part test articulated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[3] The court first examined whether the plaintiff was a member of the class for whose benefit the statute was enacted. The legislative history of the Act, along with the regulations promulgated thereunder enabled the court to conclude that the statute was intended to protect the plaintiff, since she was a person actually receiving or eligible to receive Medicaid. *Id.*, 741 F. Supp. at 1169. The court next needed to determine whether there was any legislative intent to create a private right of action. In reaching the second and third parts of the test, the court reviewed the legislative history of the Act and the intent of Congress in its enactment and concluded that a private right of action did not exist.[4] Therefore, in the present case, defendants contend that plaintiff's

3. (1) Is the plaintiff one of the class for whose *especial* benefit the statute was enacted . . . that is, does the statute create a federal right in favor of the plaintiff?

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

(3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

(4) Is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law?

4. The court reasoned that there was "no indication that Congress intended, explicitly or implicitly, for a private care patient to bring a private action for money damages under the statute . . . 'This omission of private federal judicial remedies under title XIX is indicative of a congressional intent that such not be implied.' " *Id.* The court also considered the purpose of the legislative scheme and stated that "[i]t is clear from the legislative history that, rather than focusing on the individual patient, the legislation is primarily directed at the role of participating states in providing medical care with the assistance of federal funds." *Id.*

claim for negligence per se should be dismissed since the regulations at issue in *Chalfin* and the instant case were both promulgated to implement legislation under title XIX of the Act.

Notwithstanding the decision in *Chalfin,* we must give weight to section 286 of the Restatement (Second) of Torts as previously outlined herein. Pursuant to this section, the court may allow an action for negligence per se to proceed if plaintiff alleges all of the requirements of section 286 have been met. To begin, the decision in *Chalfin* lends support to the proposition that plaintiff was a member of the class the statute was intended to protect. The court found the plaintiff to be among the protected class and specifically stated that "[t]he legislative history of the Act as well as the regulations promulgated thereunder reveal an underlying intent to protect individuals striving to qualify for Medicaid as well as those actually receiving the assistance." *Id.* Thus, plaintiff has satisfied the first element of section 286. It must therefore be determined whether the regulations, in part, were enacted to protect the interests of Mrs. Turner's health and welfare. Although the scope of the regulations indicates that they are the qualifying requirements for Medicare and Medicaid, it appears that the regulations are also designed to protect the interests of patients within the facilities participating in the program. Specifically, 42 C.F.R. §483.25 begins by stating that "[e]ach resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care." Likewise, 42 C.F.R. §483.40 provides in part that "[e]ach resident must remain under the care of a physician." In light thereof, plaintiff may be able

to establish a claim against defendants for negligence per se. Since it is not certain that the law does not permit her a recovery under this theory, defendants' preliminary objection on the foregoing basis must be denied.

Defendants also argue that Counts IV, V and VI should be dismissed from the complaint for failure to state a claim for breach of warranty. In support of their position, defendants maintain that plaintiff's claims must fail since, in the absence of a special contract, a physician is neither a warrantor of cure, nor a guarantor of results. *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968). Although defendants' contention may be correct, it must be noted that plaintiff did not plead that defendants warranted a particular cure or guaranteed a result. Instead, plaintiff pleaded that defendants breached an implied warranty of skilled and workmanlike performance. (Plaintiff's complaint, ¶¶59-61; 65-67.) If the allegations describe the manner in which the medical procedure was performed, as opposed to a guaranteed cure or a warranted specific result, then the allegations are sufficient to withstand a demurrer. In *Newbury v. Diak,* 114 Dauph. 219 (1994), this court stated that "the failure of a physician to employ reasonable skill in the performance of a duty may constitute a breach of an implied contract." *Id.* at 220. Therefore, defendants' objections to Counts IV, V and VI are denied.

Defendants also object to Count VII of the complaint on the basis that plaintiff failed to state a cause of action for informed consent. Defendants argue that the doctrine of informed consent only applies to surgical procedures. *Shaw v. Kirschbaum,* 439 Pa. Super. 24, 653 A.2d 12 (1994), *allocatur denied,* 541 Pa. 652, 664 A.2d 542 (1995). Generally, "the patient is anes-

thetized, an incision is made, and pieces of bone, tissue, etc. are excised." *Sinclair by Sinclair v. Block,* 406 Pa. Super. 540, 553, 594 A.2d 750, 757 (1991), *allocatur granted,* 529 Pa. 623, 600 A.2d 538 (1991). Since Mrs. Turner only had a nasogastric feeding tube inserted into nose and mouth, she cannot maintain a claim for informed consent.

However, plaintiff contends that the insertion of a nasogastric feeding tube is sufficient to satisfy the "touching" requirement for a battery, which gives rise to an action for informed consent. Plaintiff compares her situation to the circumstances surrounding the plaintiff in a case before the Pennsylvania Superior Court. In *Cooper v. Roberts,* 220 Pa. Super. 260, 286 A.2d 647 (1971), the plaintiff underwent a procedure in which a fiberscope was lowered through her mouth into her stomach, whereupon it punctured her stomach lining. There was a dispute over whether the gastroscopic exam constituted a surgical or operative procedure. The court noted that the plaintiff was anesthetized and taken to a separate room for the procedure, but focused, however, upon the duty of disclosure, as opposed to the nature of the procedure. *Id.* at 265 n.2, 286 A.2d at 649 n.2.

In light of *Cooper,* plaintiff has created a doubt as to whether she improperly presented a claim for relief. Based on the allegations pleaded, it would be premature to dismiss this claim at the present time. A sufficient amount of information needs to be disclosed to adequately address a demurrer on the issue of informed consent. For example, plaintiff does not address whether she or Mrs. Turner were initially apprised of the fact that Mrs. Turner would be fed through a nasogastric tube during her stay at the nursing facility. Nor does she address whether Mrs. Turner's condition required

the use of a feeding tube. She also does not discuss the terms under which Mrs. Turner was placed in the facility. In other words, was a blanket authorization signed allowing the facility to take whatever measures were necessary to care for Mrs. Turner? Due to the existence of these doubts, defendants' demurrer shall be denied.

Finally, defendant objected to plaintiff's claim for punitive damages since plaintiff failed to establish the nature of the conduct required. To prevail on a claim for punitive damages, the party's actions must be of an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct. *SHV Coal Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702 (1991). "Recklessness" has been defined as that type of conduct in which the wrongdoer has "knowledge or reason to know of facts creating a high risk of serious harm to another, and that he make[s] a deliberate choice to act or fail to act in an unreasonable manner in conscious disregard of, or indifference to, that risk." Summ. Pa. Jur. 2d, Torts §9:82.

In reviewing the complaint, this court finds that plaintiff sufficiently set forth a claim for punitive damages. In paragraph 77, she averred that defendants had knowledge that Mrs. Turner was not receiving significant regular and skilled medical assistance, thereby placing her health and welfare in serious danger. Additionally, she averred that the care which Mrs. Turner received was provided through the telephone by a physician or assistants not familiar with Mrs. Turner or through non-fully licensed assistants. She also alleged that the harm suffered by Mrs. Turner was a reasonably foreseeable consequence of the neglect and disregard of her medical and nursing care, in light of prior complaints and governmental investigations involving the same conditions

at the nursing facility. (Plaintiff's complaint, ¶78.) Finally, in a survival action, the decedent's estate may recover punitive damages if the decedent could have recovered them had he or she survived. *Harvey v. Hassinger,* 315 Pa. Super. 97, 461 A.2d 814 (1983).

Since a claim for punitive damages is not a cause of action, a preliminary objection to such claim cannot be presented, as done so by defendants, in the nature of a demurrer. Therefore, the objection will be treated as a motion to strike the claim for punitive damages and as such, will be denied.

Accordingly, the following is entered:

## ORDER

And now, December 9, 1996, for the reasons set forth in the attached opinion, the preliminary objections filed on behalf of defendants, Julie Larson M.D. and Harrisburg Family Practice Center, are hereby granted in part and denied in part.

The objections to Counts II and III, for lack of specificity, are granted. Plaintiff is allowed 20 days from the date of this order to replead paragraphs 40 and 47 at (a), (l), (m), (n), (p), (r), (d) and (t) in the manner indicated herein.

Whereas, the demurrer to Counts II and III for failure to state a cause of action for negligence per se is denied. Furthermore, the demurrers to Counts IV, V, VI and VII are denied. Plaintiff has asserted sufficient grounds in Counts IV, V and VI to establish a claim for breach of implied warranty. Count VII adequately alleges a cause of action for informed consent. Finally, defendants' motion to strike plaintiff's claim for punitive damages is denied.