604 A.2d 1198

Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, in her Capacity as Liquidator of Pennsylvania Independent Business Association, National Independent Business Association etc., Plaintiff,

v.

HEALTH MARKET, INC., Worlco Financial Services et al., Defendants.

Commonwealth Court of Pennsylvania.

Argued Dec. 19, 1991.

Decided March 2, 1992.

Robert T. Vance, Jr., for plaintiff.

John A. Hardy, Jr., for defendants.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

Before the Court are preliminary objections of defendants, Donald McKinley, Mass Media, and Worlco Financial Services, Inc., filed August 30, 1991, and preliminary objections of defendants, Springer Agency and Sokolow & McMillian, filed October 29, 1991 (hereinafter collectively referred to as objecting defendants), to a complaint filed by Constance B. Foster, Insurance Commissioner of the Commonwealth (Commissioner). The Commissioner filed the complaint against all defendants[1] pursuant to Sections 501–563 (Article V) of the Insurance Department Act of 1921 (Act)[2] in her capacity as statutory liquidator of Pennsylvania Independent Business Association, National Independent Business Association, NIBA Group Benefits Trust, American Independent Business Alliance and AIBA Group

---

[1.] In addition to the objecting defendants, the other defendants in this action are Health Market, Inc., National Brokerage Association, F.E.S. Brokerage, Inc., Futura Marketing, Inc., and First Philadelphia Equities.

[2.] Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 221.1–221.63. Article V was added by the Act of December 14, 1977, P.L. 280, *as amended.*

Insurance Trust, a/k/a AIBA Group Benefits Trust (hereinafter collectively referred to as AIBA). The complaint alleges that defendants sold insurance for AIBA, which was not licensed to do business in Pennsylvania. Further, the Commissioner alleges that defendants unlawfully received commission payments from AIBA in connection with the unlawful sales. The Commissioner brought this action on behalf of the policyholders to recover commission payments made to defendants by AIBA in order to attempt to pay some of the outstanding claims against AIBA arising out of its liquidation.

As a result of a financially troubled history, the Commissioner, by order dated May 2, 1989, suspended AIBA from doing any further business. On June 8, 1989, the Commissioner filed with this Court a petition for liquidation of AIBA. *Foster v. Pennsylvania Independent Business Association*, 170 M.D. 1989. On November 24, 1989, the Insurance Department of the Commonwealth of Pennsylvania (Department), Craig B. Sokolow, chief executive officer and majority shareholder of AIBA, and AIBA entered into a settlement agreement, which settled the litigation pending in this Court and in the Administrative Hearings Office of the Department. In the agreement, AIBA agreed to consent to liquidation pursuant to Section 514(12) of the Act, 40 P.S. § 221.14(12).

Consents to Order of Liquidation were filed with this Court, and AIBA was placed into liquidation pursuant to Article V of the Act on December 5, 1989. On February 15, 1990, this Court issued orders appointing the Commissioner as liquidator of AIBA.

The Commissioner asserts that at all relevant times, defendants were agents of AIBA, marketed AIBA's unlicensed products to the general public and, pursuant to Section 605 of the Act, 40 P.S. § 235, are personally liable for the amount of uncovered losses under policies of insurance made by or through them on behalf of AIBA. In Count I of the complaint, the Commissioner specifically identifies uncovered losses in the amount of $23,052.91

attributable to Agent Sokolow & McMillian and reserves the right to amend with additional loss figures as that information becomes available.

In Count II of the complaint, the Commissioner argues that because AIBA's assets have been insufficient to pay 100% of its policyholders' claims for some time, commission payments made by AIBA to defendants during the period June 8, 1988 to June 8, 1989 are "voidable preferences" within the meaning of Section 530(a) of the Act.[3] Further, she asserts that all commission payments made to defendants Health Market, Inc. and Sokolow & McMillian during the aforementioned period are voidable preferences under Section 530(a)(ii), (iii) and/or (iv),[4] because of Craig Sokolow's involvement as a 50% owner of Health Market, Inc., an owner of Sokolow & McMillian, and the President of AIBA. Additionally and alternatively, it is argued that all commission payments made by AIBA to defendants during the period January 8, 1989 to June 8, 1989 are voidable preferences within the meaning of Section 530(a)(ii),[5] because these payments were made within four months prior to the filing of the petition for liquidation.

In Count III of the complaint, the Commissioner alleges that because of Sokolow's 50% ownership of Health Market, Inc. and his role as President of AIBA, that Health Market, Inc. is liable to the Commissioner for the total amount of all commission payments made by AIBA to its agents during the relevant period pursuant to Section 530(k) of the Act.[6] Likewise, the Commissioner asserts in Count IV that Sokolow & McMillian is liable for the total amount of commission payments made by AIBA to its agents during the period June 8, 1988 to June 8, 1989 pursuant to 40 P.S. § 221.30(k). Finally, in Count V, a count in equity, it is alleged that the defendants were unjustly enriched by the receipt of commissions because they knew or should have

3. 40 P.S. § 221.30(a).
4. 40 P.S. § 221.30(a)(ii), (iii) and (iv).
5. 40 P.S. § 221.30(a)(ii).
6. 40 P.S. § 221.30(k).

known that the contracts of insurance being sold were worthless inasmuch as AIBA was, or was about to become, insolvent and was not authorized to do business in Pennsylvania.

Both sets of preliminary objections are identical with the exception of a preliminary objection in the nature of a motion for a more specific pleading, pursuant to Pa.R.C.P. No. 1017(b)(3), filed by defendants McKinley, Mass Media and Worlco Financial Services, Inc., which we will address first. Therein, these defendants contend that Pa.R.C.P. No. 1019(f) requires that the Commissioner specify all amounts of uncovered losses in Count I, paragraph 24 of the complaint against all defendants. As noted earlier, the only such information provided in the complaint are losses in the amount of $23,052.91 as to Sokolow & McMillian.

Pa.R.C.P. No. 1019(f) provides that "[a]verments of time, place and items of special damage shall be specifically stated." The Commissioner counters that these are general damages, not special damages and, therefore, they need not be specifically stated. Further, she maintains that the complaint adequately informs the objecting defendants of the nature of the case against them and the types of damages she seeks to obtain from them. She argues that general damages need only be specifically provided insofar as that information is or becomes available. Through discovery, the Commissioner expects to obtain from defendants the names of the insureds and will then contact those persons to determine the precise amount of uncovered losses associated with their policies. Because these matters are the subject of discovery, the Commissioner requests that we overrule the preliminary objection requesting a more specific pleading.

The subject information is clearly evidentiary in nature and, therefore, is the proper subject of discovery. Further, the Court presumes that defendants, having sold the policies to the insureds, would most likely be in at least as good a position to know the amounts of uncovered losses as would the Commissioner. Accordingly, we overrule the

preliminary objection in the nature of a motion for a more specific pleading.

The remaining preliminary objections, all in the nature of a demurrer pursuant to Pa.R.C.P. No. 1017(b)(4), were filed on behalf of all objecting defendants. In ruling on preliminary objections in the nature of a demurrer, all well pleaded facts in the complaint and all inferences reasonably deducted therefrom must be accepted as true. *City of Philadelphia v. Buck*, 138 Pa.Commonwealth Ct. 250, 587 A.2d 875, *petition for allowance of appeal denied*, 528 Pa. 618, 596 A.2d 801 (1991). "A demurrer will be sustained only when it appears, with certainty, that the law permits no recovery under the allegations pleaded." *Id.*, 138 Pa.Commonwealth Ct. at 253, 587 A.2d at 877. Further, any doubts must be resolved against the objecting party. *Aetna Electroplating Company, Inc. v. Jenkins*, 335 Pa.Superior Ct. 283, 484 A.2d 134 (1984). Applying these principles to the pleadings at issue, it is apparent that all of objecting defendants' preliminary objections must be overruled.

### *Jurisdiction Pursuant to Section 605 of the Act*

Objecting defendants argue that personal liability under Section 605 of the Act attaches only if the contracts of insurance were unlawfully made and only if AIBA was not authorized to do business in Pennsylvania.[7] It is objecting defendants' contention that because there has never been any judicial determination that either of these conditions exist, the Commissioner is without jurisdiction. Further, objecting defendants argue that the settlement agreement does not concede to any unlawful activities on behalf of AIBA or defendants and point out that the Department,

7. That section states:
  An insurance agent shall be personally liable on all contracts of insurance or suretyship unlawfully made by or through him, directly or indirectly, for or in behalf of any company, association, or exchange not authorized to do business in this Commonwealth. Any person soliciting risks, forwarding premiums, or countersigning or delivering policies, shall be deemed to be the agent of the company, association, or exchange, within the meaning of this section.
  40 P.S. § 235.

by way of a notice dated May 26, 1989 directed to the policyholders and amending a May 22, 1989 suspension order, stated that premiums on policies then in force were to continue to be paid until June 1989. This action, according to objecting defendants, caused premiums to be paid, affirmed the lawfulness of those contracts of insurance, and negated the claim that AIBA was not authorized to do business in Pennsylvania. Therefore, they allege that the complaint fails to establish that defendants' conduct was unlawful.

The Commissioner argues that this preliminary objection should be overruled because for personal liability to attach under Section 605 of the Act, all that need be pleaded is that the agent made an insurance contract on behalf of a company that was not authorized to do business in Pennsylvania. Further, the Commissioner counters that the May 26th notice did not amend the May 2 suspension order but merely explained the proceedings in more easily understood terms and in no way affected the legal status of those involved. We agree with the Commissioner and, therefore, overrule the preliminary objection.

*Jurisdiction Pursuant to Section 502 of the Act*

The Commissioner alleges jurisdiction to bring this action based on Section 502 of the Act, 40 P.S. § 221.2, which states that the following persons are subject to the proceedings authorized by Article V of the Act:

(1) All insurers who are doing, or have done, an insurance business in this Commonwealth, and against whom claims arising from that business may exist now or in the future.

(2) All insurers who purport to do an insurance business in this Commonwealth.

(3) All insurers who have insureds resident in this Commonwealth.

(4) All other persons organized or in the process of organizing with the intent to do an insurance business in this Commonwealth.

(5) All nonprofit service plans and all fraternal benefit societies and beneficial societies subject to Title 40 of the

Pennsylvania Consolidated Statutes (relating to insurance).

(6) All title insurance companies, subject to Article VII of the act of May 17, 1921 (P.L. 682, No. 284), known as 'The Insurance Company Law of 1921.'

Objecting defendants contend that the complaint should be dismissed because they do not fit within the category of persons enumerated in that section. The Commissioner counters that Section 502 was not intended to be all-inclusive in defining the persons who may be sued by the Commissioner as liquidator.

Further, objecting defendants argue that a cause of action arising out of 40 P.S. § 235 is only available to individual injured insureds or their assignees and that the Commissioner has no express or implied authority to enforce the provisions therein. The Commissioner maintains that the Act is to be liberally construed and that the General Assembly intended that the liquidator would have all necessary powers to fulfill her statutory obligations. Further, the Commissioner argues that an interpretation of Section 605 as empowering her to pursue a claim as liquidator would promote efficiency in the liquidation process and would avoid a multiplicity of actions against AIBA agents.

She contends that to effectuate its purpose, the Act was designed to permit the liquidator to pursue this action against the defendants on behalf of the injured AIBA insureds. Section 501(b) of the Act, 40 P.S. § 221.1(b) provides that Article V "shall be liberally construed to effect the purpose stated in subsection (c)." Subsection (c) states:

The purpose of this article is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers, through (i) early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures; (ii) improved methods for rehabilitating insur-

ers, involving the cooperation and management expertise of the insurance industry; (iii) enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation; (iv) equitable apportionment of any unavoidable loss; (v) lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this Commonwealth; and (vi) regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

40 P.S. § 221.1(c). Additionally, Sections 523(13) and 523(19) empower the Commissioner, as liquidator, "[t]o prosecute any action which may exist in behalf of the creditors, members, policyholders or shareholders of the insurer against any officer of the insurer or any other person" and "[t]o exercise and enforce all the rights, remedies, and powers of any creditor, shareholder, policyholder or member, including any power to avoid any transfer or lien that may be given by the general law and that is not included with sections 528 through 530." Section 523(23) provides that the powers of the liquidator enumerated in Section 523 are not to be construed as limiting her powers or as excluding her right to do other acts not specifically enumerated, "as may be necessary or expedient for the accomplishment of or in aid of the purpose of liquidation." A liberal construction of the sections indicates that the General Assembly intended an interpretation in favor of the public interest and, with that in mind, intended that the liquidator would have standing to pursue the instant cause of action against AIBA agents under Sections 502 and 605 of the Act. Accordingly, objecting defendants' preliminary objections concerning these sections are overruled.

### Earned versus Unearned Commissions

■ Objecting defendants assert that Section 535 of the Act, 40 P.S. § 221.35(a), empowers the Commissioner, as

statutory liquidator, to recover from agents and brokers only those commissions attributable to unearned premiums. They argue that the law gives the Commissioner no authority to demand that agents remit gross premiums, without the right to deduct their earned commissions. They emphasize that the Commissioner's Count II does not differentiate between earned and unearned commissions and that, in fact, all commissions that were paid were earned because coverage was provided to the policyholders up to June 1989. The Commissioner counters that the commissions paid to AIBA agents during the relevant statutory period are voidable preferences, as specified in 40 P.S. § 221.30, and are subject to collection by the liquidator. According to the Commissioner, there is no distinction made between earned and unearned commissions.

The Commissioner maintains that agents are creditors within the meaning of Section 530 of the Act and as defined in Section 503 of the Act, as to their commissions, because at the time an insurance contract is placed, the agent has a claim against the insurer for his or her commission on the sale. Section 503 defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute, fixed or contingent." We conclude that it would be reasonable to infer that agents are creditors within the meaning of Section 503 and, therefore, that their commissions, if determined to be preferences, are recoverable pursuant to Section 530 of the Act. Therefore, we overrule this preliminary objection.

Finally, defendants object to Count V of the Commissioner's complaint, which seeks to recover all commission payments made to defendants by AIBA, the total amount of uncovered losses for which defendants are responsible and other amounts, is a redundant restatement of prior counts and, therefore, should be dismissed. Although the recovery sought in Count V is identical to that sought in other counts, the theory upon which entitlement is based differs. Accordingly, this preliminary objection is overruled.

Based on the foregoing discussion, all of the preliminary objections are overruled.

## ORDER

AND NOW, this 2nd day of March, 1992, the preliminary objections filed by defendants, Springer Agency, Sokolow & McMillian, Donald McKinley, Mass Media, and Worlco Financial Services, Inc., in the above-captioned matter, are overruled. Further, all defendants are directed to file an answer to the complaint within twenty (20) days of the date of this order.