**Grissinger v. Nationwide Mutual Insurance Co.**

C.P. of Dauphin County, no. 3235 S 1997.

*Richard A. Sadlock,* for plaintiff.
*Karen Durkin,* for defendant.

CLARK, *J.,* January 9, 1998—Defendant, Nationwide Mutual Insurance Company, presented this court with preliminary objections to plaintiff's complaint. Upon careful consideration of the arguments given, the preliminary objections are granted.

On August 21, 1995, plaintiff, Albert Grissinger, was involved in a motor vehicle accident in which he suffered injuries to his person. As a result of the collision, plaintiff alleges that he has been required to undergo extensive medical treatment. At all times relevant hereto, plaintiff was covered by a policy of insurance issued by Nationwide. Plaintiff submitted his medical bills to Nationwide for payment under the first-party medical benefits of his policy. Nationwide paid for a portion of the treatment, but declined to issue payment on the remainder.

Plaintiff contends that all of his medical bills were for the treatment of accident-related injuries which treatment was and continues to be reasonable and necessary. Nationwide has requested that plaintiff's medical records be reviewed several times by a peer review organization. Plaintiff maintains that Nationwide did not need to request the peer reviews since his health care providers furnished sufficient documentation of the reasonableness and necessity of his care.

In Count I of the complaint, plaintiff avers that Nationwide acted without reasonable foundation in failing to pay all of the medical bills submitted for payment under his policy. He seeks to recover attorney's fees, costs and interest under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1716 and §1798. Plaintiff further avers that Nationwide acted wantonly in denying him first-party benefits and, therefore, seeks treble damages and interest in accordance with 75 Pa.C.S. §1797(b)(4).

In Count II, plaintiff has set forth a private cause of action against Nationwide for bad faith pursuant to 42 Pa.C.S. §8371. Plaintiff has described Nationwide's use of the peer review process as a "sham" since his injuries are related to the accident and the denial of first-party benefits was without reasonable justification. Due to Nationwide's alleged bad faith conduct, plaintiff contends he is entitled to an award of interest, punitive damages, court costs and attorney's fees.

In response to the allegations contained in plaintiff's complaint, Nationwide filed preliminary objections in the nature of a demurrer, motion for a more specific pleading and motion to strike. Preliminary objections shall be sustained only in cases that are free and clear from doubt. *Bower v. Bower,* 531 Pa. 54, 611 A.2d

181 (1992). In ruling on an objection in the nature of a demurrer, all well-pleaded facts contained in the complaint and all inferences reasonably deducible therefrom must be accepted as true. *Wurth by Wurth v. City of Philadelphia,* 136 Pa. Commw. 629, 584 A.2d 403 (1990). Only in matters where it appears with certainty that the law does not permit a recovery under the allegations pleaded will a demurrer be sustained. *Foster v. Health Market Inc.,* 146 Pa. Commw. 156, 604 A.2d 1198 (1992).

Nationwide first argues that plaintiff failed to state a claim for bad faith since his only basis for such claim is Nationwide's submission of plaintiff's medical records to a PRO. Nationwide relies on Pennsylvania statutory law for the express authorization to request peer reviews. The Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1797(b)(1) provides that:

"Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary."

Nationwide argues that the law explicitly permits insurers to seek treatment evaluations from a PRO to determine if the treatment is reasonable and necessary. Nationwide contends that it merely exercised the powers given to it by the legislature when it submitted plaintiff's medical records for a peer review evaluation. As Nationwide was acting in accordance with the law, it concludes that plaintiff does not have the basis to assert a bad faith action against it.

The issue before us then is whether Nationwide acted in bad faith by requesting peer review evaluations of plaintiff's treatment and condition. In light of the decisions previously rendered by this court, we find that Nationwide conducted itself in a manner expressly permissible by law. Plaintiff has provided no foundation upon which a cause of action for bad faith could be asserted against Nationwide. Absent such foundation, Nationwide's preliminary objections are granted and plaintiff's complaint is dismissed.

The issue in this action was before us in *Signor v. United States Fidelity & Guaranty Co.,* 115 Dauph. 279 (1995), wherein we dismissed a claim of bad faith brought pursuant to 42 Pa.C.S. §8371. In that case, the plaintiff sustained serious personal injuries in an automobile accident while covered by a policy of insurance issued by the defendant. The defendant referred the plaintiff's medical bills to a PRO for an evaluation. The report prepared by the PRO concluded that some of the treatment being rendered to the plaintiff was unnecessary. As a result of the report, the defendant notified the plaintiff that it would not honor certain bills. On request, the plaintiff received a reconsideration of the peer review, which confirmed the initial conclusion that some of the treatment was not necessary. The plaintiff filed a complaint, alleging, in part, that the defendant acted in bad faith when denying payment of her medical bills. The defendant argued for a dismissal of the bad faith count claiming that the statutory remedy of bad faith contained in 42 Pa.C.S. §8371 was not available in a cause of action for first-party benefits under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq.

In deciding whether to dismiss the bad faith count, we examined the decision of the Pennsylvania Superior

Court in *Barnum v. State Farm Mutual Auto Insurance Co.,* 430 Pa. Super. 488, 635 A.2d 155 (1993), *reversed and remanded,* 539 Pa. 673, 652 A.2d 1319 (1994).[1] The Superior Court examined the interplay between 75 Pa.C.S. §1797 and 42 Pa.C.S. §8371. It explained that the specific provisions of section 1797 are an exception to the general remedy of bad faith provided at section 8371, and should be applied to claims for first-party benefits under the Motor Vehicle Financial Responsibility Law. Although *Barnum* was reversed, we adopted the Superior Court's reasoning in ruling as follows:

"We hold that an insured cannot seek damages under section 8371 when they have only alleged that the act of submitting bills to a peer review organization for review constitutes bad faith. We would note that the insured would have to allege some misconduct on the part of the insurance company before the bills were submitted to the PRO in order to maintain a claim for damages under both 42 Pa.C.S. §8371 and 75 Pa.C.S. §1797." *Id.,* 115 Dauph. at 283.

Following our ruling in *Signor,* we were again confronted with a set of circumstances where an insured commenced an action against his insurer who refused to cover medical bills reviewed by a PRO on the grounds that the bills were not reasonable or necessary. In *Herd v. Nationwide Insurance Co.,* 116 Dauph. 141 (1996), the plaintiff argued that the defendant's request for a medical review of his treatment was merely a pretext

---

1. *Barnum, supra,* was reversed and remanded for proceedings consistent with the Pennsylvania Supreme Court's decision in *Terminato v. Pennsylvania National Insurance Co.,* 538 Pa. 60, 645 A.2d 1287 (1994) on the issue of whether a party must seek reconsideration of a peer review decision prior to initiating an action in the courts.

for denying him benefits and thus, an act of bad faith. We began our analysis by examining the definition of bad faith conduct as found in Black's Law Dictionary 139 (6th ed. 1990):

"*Insurance.* 'Bad faith' on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Id.,* 116 Dauph. at 143. (citations omitted)

Keeping in mind the definition of bad faith, we reviewed the allegations contained in the plaintiff's complaint[2] and found that the essence of the defendant's bad faith was an alleged practice of routinely conducting medical reviews on chiropractic treatment. *Id.,* 116 Dauph. at 144. Even if that allegation were true, we did not believe that such practice amounted to bad faith

---

2. The law firm, which represented the plaintiff in *Herd,* also represents the plaintiff in the instant action. Thus, we find it interesting that the complaint at issue contains an allegation that is substantially similar to an allegation included in the *Herd* complaint.

The relevant paragraph in *Herd* reads:

"(17) Plaintiff John Herd maintains that defendant Nationwide Insurance Company conducted a sham peer review solely for the purpose of intimidating him from seeking further treatment which he felt to be medically necessary and appropriate and which his treating chiropractor had recommended . . . ."

The relevant paragraph in the instant action reads:

"(20) Plaintiff Albert E. Grissinger Jr. maintains defendant Nationwide conducted sham peer reviews solely for the purpose of intimidating him from seeking further treatment which he felt to be medically necessary and appropriate and which his treating physician recommended."

as that term has been defined. *Id.* To the contrary, we believed that the practice of peer review was the antithesis of bad faith since it summons an independent report on the nature of an injured party's treatment. *Id.* The count of the complaint alleging bad faith was accordingly dismissed.

Our most recent decision on the issue of bad faith was rendered in *Cacchiotti v. Material Damage Adjustment Corp.,* 116 Dauph. 189 (1996). The plaintiff set forth a claim for damages under 75 Pa.C.S. §1797 and 42 Pa.C.S. §8371. In attempting to preserve her cause of action for bad faith after our holding in *Signor, supra,* the plaintiff contended that the defendant failed to adhere to insurance department regulations and follow the appropriate standard when referring her medical bills to a PRO. The plaintiff argued that a prudent person, familiar with the PRO procedures, standards, and practices, would not have believed it necessary to submit her expenses to a PRO to determine the reasonableness or necessity of her care. Notwithstanding the plaintiff's detailed allegations of what occurred before her bills were referred to a PRO, her claim for bad faith was dismissed. *Cacchiotti, supra,* 116 Dauph. at 193. After clearing away the haze, we found that the plaintiff was asserting that the act of submitting the bills to a PRO constituted bad faith. *Id.*

Based on the foregoing line of decisions, we find that plaintiff failed to establish a claim of bad faith against Nationwide. In light of this authority, we are hard-pressed to understand why we need to visit this issue again. We hope that the position of this court on whether the act of requesting a peer review evaluation is an act of bad faith is finally understood.

Accordingly, the following is entered:

ORDER

And now, January 9, 1998, it is hereby ordered that the defendant's preliminary objections are granted and the complaint is dismissed.