## J. Goldstein & Company P.C. v. Goldstein

212

*Michael J. Kane,* for plaintiff.
*Bart Benoff,* for defendant.

HERRON, *J.*, June 14, 2001—This opinion addresses the preliminary objections filed by defendants Joel D. Goldstein, CPA, P.C., Joel D. Goldstein as president of Joel D. Goldstein, CPA, P.C. and Joel D. Goldstein, individually, to the complaint of plaintiff J. Goldstein and Company, P.C., whose principal is Jerry Goldstein. For the reasons set forth herein, the court has overruled the preliminary objections in part and sustained them in part.

## BACKGROUND

As stated in the introduction, this case involves unrelated Goldsteins and Goldstein-related entities. J. Goldstein and Company, the plaintiff in this matter, was formed in August 1981 by Jerry E. Goldstein, CPA as a sole proprietorship. In 1983, J. Goldstein and Company became a professional corporation, with Jerry owning all of its issued and outstanding shares.

On July 1, 1990, the plaintiff hired Joel Goldstein as an associate accountant. Although Joel had little prior accounting experience, Jerry took him under his wing and, by February 1993, Joel had passed the certified public accounting examination. Four months later, Joel was issued one share of the plaintiff's stock.

Around this time, the plaintiff and Joel allegedly entered into an oral agreement under which Joel would endeavor to solicit clients for the plaintiff. Although the plaintiff would bill and collect fees from such clients, it would pay Joel 50 percent of all gross revenue collected from them. Joel's payment rights under the agreement were in addition to his base salary.[1]

---

1. The complaint also asserts that the plaintiff issued one share of stock to Thomas Yager CPA, another accounting associate with the plaintiff, on January 1, 1995.

In November 2000, Joel secretly formed "Joel D. Goldstein CPA, P.C." (Joel's firm) and supposedly began luring the plaintiff's clients. According to the complaint, many of these clients had long-standing relationships with the plaintiff and Jerry, and terminated these relationships due to Joel's enticements. As part of his efforts, Joel allegedly copied the plaintiff's files relating to particular clients, as well as the plaintiff's entire customer list, and used the plaintiff's tax preparation software in his work at his firm.

On December 13, 2000, Joel informed Jerry that he was terminating his employment with the plaintiff. Joel's last day of employment with the plaintiff was December 22, 2000. Jerry subsequently discovered Joel's supposed duplicity and has filed a complaint against him. In the complaint, Jerry asserts causes of action for breach of contract, intentional interference with contractual relations, conversion, trespass to chattel, breach of duty of loyalty, breach of fiduciary duty, unjust enrichment and trade secrets.[2] In response, the defendants have filed preliminary objections asserting legal insufficiency, failure to attach a writing, insufficient specificity and inclusion of scandalous and impertinent matter.

## DISCUSSION

The plaintiff's claims for breach of contract and conversion are legally insufficient, and the objections thereto are sustained. The remaining objections are without merit and are overruled.

---

2. Jerry's claims for intentional interference with contractual relations and trade secrets are asserted against all three defendants. The remaining claims are asserted against Joel as an individual only.

I. *The Plaintiff's Claims for Intentional Interference with Contractual Relations, Breach of Fiduciary Duty and Unjust Enrichment Are Legally Sufficient, While its Claims for Breach of Contract and Conversion Are Not*

Joel first challenges the legal sufficiency of the plaintiff's claims for breach of contract, intentional interference with contractual relations, conversion, breach of fiduciary duty and unjust enrichment. When a court is presented with preliminary objections asserting legal insufficiency,

"[I]t is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer. . . . Put simply, the question presented by demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999). (citations omitted)

For the purposes of reviewing the legal sufficiency of a complaint, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 942 (Pa. Super. 2000).

## A. Breach of Contract

To establish a claim for breach of contract, a claimant must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. 1999). In the instant matter, the plaintiff's breach of contract claim arises from Joel's alleged breach of the agreement.

The plaintiff describes the agreement as follows:

"J. Goldstein and Company entered into a verbal employment agreement with Joel Goldstein whereby, in addition to his full-time employment and base salary, Joel Goldstein would endeavor to bring tax and accounting clients to J. Goldstein and Company. J. Goldstein and Company would bill and collect 100 percent of the gross revenue generated from said clients and the [sic] pay to Joel Goldstein 50 percent of said gross revenue." Complaint at ¶12.

According to the complaint, Joel breached the agreement in the following ways:

"(a) by personally providing tax and accounting services to clients and receiving revenue therefrom, without the knowledge and permission of J. Goldstein and Company;

"(b) by not providing J. Goldstein and Company with 100 percent of the gross revenue generated from these clients (an[d] then being paid 50 percent); and

"(c) by not working full-time for J. Goldstein and Company." Complaint at ¶27.

Even assuming the complaint's allegations are true, the plaintiff does not allege a complete claim for breach of contract. The only action demanded of Joel in the agreement is that he solicit clients for the plaintiff. The language of the agreement does not include a contractual prohibition on him soliciting his own clients, retaining fees paid by such clients or working less than full-time. Because there is no assertion that Joel failed to endeavor to solicit clients for the plaintiff, the court cannot conclude that Joel breached the agreement. Thus, the plaintiff cannot sustain a cause of action for breach of contract.

Attempting to bolster its arguments, the plaintiff asserts that its breach of contract claim is valid because,

"[u]nder Pennsylvania law, an employee cannot compete with his [sic] employer." Plaintiff's memorandum at 6. See also, *SHV Coal Inc. v. Continental Grain Co.,* 376 Pa. Super. 241, 249, 545 A.2d 917, 920-21 (1988) (concluding that the defendant diverted business from employer to competitor during his term of employment), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991). An employee's competition with his or her employer, however, does not give rise to a breach of contract claim. See *Spring Steels Inc. v. Molloy,* 400 Pa. 354, 162 A.2d 370 (1960) (weighing employee's competition as a claim for unfair competition); *SHV Coal Inc.,* 376 Pa. Super. 241, 545 A.2d 917 (treating former employer's claim as breach of fiduciary duty/ duty of loyalty claim). As a result, the complaint does not allege facts to support a breach of contract claim, and the claim must be dismissed.

B. Intentional Interference with Contractual Relations

A successful claim for intentional interference with contractual relations must satisfy four elements:

"(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

"(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

"(3) the absence of privilege or justification on the part of the defendant; and

"(4) the occasioning of actual legal damage as a result of the defendant's conduct." *Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa. Super. 1997).

The definition of "privilege" in the context of a claim for intentional interference has proven elusive:

"Unlike other intentional torts such as intentional injury to person or property or defamation, this branch of tort law has not developed a crystallized set of definite

rules as to the existence or non-existence of a privilege to act in the manner stated in [Restatement (Second) of Torts] §§766, 766A or 766B."[3] *Ruffing v. 84 Lumber Co.*, 410 Pa. Super. 459, 468, 600 A.2d 545, 549 (1991) (quoting *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 433 n.17, 393 A.2d 1175, 1184 n.17 (1978), and Restatement (Second) of Torts §767 cmt. b).

Because of this, Pennsylvania courts have held that "[t]he absence of privilege or justification on the part of the defendant is merely another way of stating that the defendant's conduct must be improper." *Cloverleaf Development Inc. v. Horizon Financial F.A.*, 347 Pa. Super. 75, 83, 500 A.2d 163, 167 (quoting *Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division*, 281 Pa. Super. 560, 581 n.11, 422 A.2d 611, 622 n.11 (1980)). (quotation marks omitted) See also, *Adler, Barish, Daniels, Levin and Creskoff*, 482 Pa. at 433 n.17, 393 A.2d at 1184 n.17 (noting that Restatement (Second) of Torts §767 "focuses upon whether conduct is 'proper,' rather than 'privileged'").[4]

---

3. These sections address intentional interference with performance of contract by a third party, intentional interference with another's performance with his own contract and intentional interference with prospective contractual relations.

4. To determine whether a defendant's conduct is improper, a court must weigh the following seven factors:

"(a) the nature of the actor's conduct,

"(b) the actor's motive,

"(c) the interests of the other with which the actor's conduct interferes,

"(d) the interests sought to be advanced by the actor,

"(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

"(f) the proximity or remoteness of the actor's conduct to the interference and

"(g) the relations between the parties." *Small v. Juniata College*, 452 Pa. Super. 410, 418, 682 A.2d 350, 354 (1996) (quoting Restatement (Second) of Torts §767).

The defendants correctly contend that it is generally not improper for a former employee to solicit a former employer's clients. Defendants' memorandum at 3 (citing *Spring Steels Inc. v. Molloy,* 400 Pa. 354, 162 A.2d 370 (1960)). This, however, does *not* excuse an employee's competition with a *current* employer, which is the situation alleged in the complaint. Complaint at ¶¶17-18, 21-22. The defendants' assertions of propriety and privilege thus are without merit, and their objections to the plaintiff's intentional interference claim is overruled.

## C. Conversion

Pennsylvania law defines conversion as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Paves v. Corson,* 765 A.2d 1128, 1134 (Pa. Super. 2000). The plaintiff's conversion claim is based on Joel's possession of funds he received from clients outside of his work with the plaintiff, allegedly in violation of the agreement. Because the plaintiff has not pled a breach of the agreement, however, it cannot establish that the plaintiff had any right to the funds in question. Accordingly, the plaintiff's claim for conversion must be dismissed.

## D. Breach of Fiduciary Duty

Under Pennsylvania law, "an agent is subject to a duty not to compete with the principal concerning [the] subject matter of the agency" unless otherwise agreed. *East & West Coast Service Corp. v. Papahagis,* 344 Pa. 183, 186, 25 A.2d 339, 340 (1942) (quoting Restatement of Agency §393). See also, *SHV Coal Inc. v. Continental Grain Co.,* 376 Pa. Super. 241, 249, 545 A.2d 917, 920-21 (1988) (liability attached to employee who diverted

business from employer to competitor during his term of employment), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991); *Levy and Surrick v. Surrick,* 362 Pa. Super. 510, 513-14, 524 A.2d 993, 994 (1987) (quoting Restatement (Second) of Agency §393 for the proposition that an agent "is subject to a duty not to compete with the principal concerning the subject matter of his agency"). This relationship between agent and principal has been described as being fiduciary in nature. *Onorato v. Wissahickon Park Inc.,* 430 Pa. 416, 423, 244 A.2d 22, 26 (1968) ("to permit [an agent] to be placed in a position where he inevitably must be subjected to the demands of conflicting duties, is not only harmful to the business in which he is engaged, but also against sound morals and public policy").

In his memorandum, Joel argues that no fiduciary relationship arises from his ownership of the plaintiff's stock. Even if this is true, however, his employment and agency relationship with the plaintiff gives rise to a separate and distinct fiduciary duty that he is alleged to have breached. The objections to the plaintiff's breach of fiduciary duty claim must therefore be overruled.[5]

## E. Unjust Enrichment

In Count VII, the plaintiff asserts a claim against Joel for unjust enrichment based on Joel's alleged use of the plaintiff's accounting software in his new enterprise.

---

5. Because the plaintiff's fiduciary duty claim is not based on Joel's stock ownership, there is no need to attach a copy of the stock certificate to the complaint. See Pa.R.C.P. 1019(i) ("[w]hen any claim or defense is based upon a writing, the pleader shall attach copy of the writing"). Cf. *DeGenova v. Ansel,* 382 Pa. Super. 213, 220, 555 A.2d 147, 150 (1988) (where plaintiff's claims were brought in tort, he had no obligation to attach a copy of his insurance agreement to his complaint); *PennDOT v. Bethlehem Steel Corp.,* 33 Pa. Commw. 1, 15, 380 A.2d 1308, 1315 (1977) ("Pennsylvania Rules of Civil Procedure only requires a document to be attached when it forms the basis for the claim").

The elements of a claim for unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 622 (Pa. Super. 1999), *app. denied,* 561 Pa. 700, 751 A.2d 193 (2000). (quotation marks omitted) See also, *General Casmir Pulaski Bldg. and Loan Association v. Provident Trust Co. of Philadelphia,* 338 Pa. 198, 202, 12 A.2d 336, 338 (1940) ("[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other"). A contractual relationship is not required for an unjust enrichment claim. *Linnet v. Hitchcock,* 324 Pa. Super. 209, 215 n.3, 471 A.2d 537, 540 n.3 (1984). Although Joel does not challenge the allegations supporting the plaintiff's unjust enrichment claim, he contends that the complaint does not set forth the damages incurred with adequate specificity.

Special damages,[6] such as damages for unjust enrichment, must be specifically stated. Pa.R.C.P. 1019(f). See also, *Harkins v. Zamichieli,* 266 Pa. Super. 401, 408, 405 A.2d 495, 499 (1979) (implying that a failure to plead damages for an unjust enrichment claim specifically would be grounds for objection). Generally, damages are pled with adequate specificity where they "give the general details of the services rendered, the results accomplished, and the valuation of the total services." Goodrich-Amram 2d §1019(f):9. A request for a more specific pleading of damages "will be denied where the details of items of special damages, pleaded generally, are readily obtainable by discovery." *Com-*

---

6. Special damages are "those which are not the usual and ordinary consequences of the wrong done, but which depend upon special circumstances." *Parsons Trading Co. v. Dohan,* 312 Pa. 464, 468, 167 A. 310, 312 (1933).

*monwealth ex rel. Milk Marketing Board. v. Sunnybrook Dairies Inc.,* 29 Pa. Commw. 210, 214, 370 A.2d 765, 768 (1977). See also, *Foster v. Health Market Inc.,* 146 Pa. Commw. 156, 161-62, 604 A.2d 1198, 1201 (1992) (overruling objection asserting insufficient specificity where amount of damages could be obtained through discovery).

While the complaint does not set forth the exact amount of damages incurred as a result of Joel's alleged misconduct, the plaintiff maintains that "the information required to calculate the damages . . . are in the exclusive control of the defendant Joel Goldstein." Plaintiff's memorandum at 11. This information, the plaintiff argues further, "cannot be ascertained prior to discovery. . . ." *Id.* On this basis, the court must conclude that the request for damages is adequately specific for the time being.

## II. *The Complaint Is Sufficiently Specific*

Pennsylvania is a fact-pleading jurisdiction that requires a plaintiff to "identify the material issues in the case by succinctly summarizing the material facts underlying the claim." *Pontiere v. James Dinert Inc.,* 426 Pa. Super. 576, 580 n.1, 627 A.2d 1204, 1206 n.1 (1993) (citing *Sevin v. Kelshaw,* 417 Pa. Super. 1, 611 A.2d 1232 (1992)).

To determine if a pleading sets forth facts with adequate specificity, a court must ascertain whether the allegations are "sufficiently specific so as to enable [a] defendant to prepare [its] defense." *Smith v. Wagner,* 403 Pa. Super. 316, 319, 588 A.2d 1308, 1310 (1991). See also, *In re Barnes Foundation,* 443 Pa. Super. 369, 381, 661 A.2d 889, 895 (1995) (" '[a pleading] should . . . fully summariz[e] the material facts,' . . . and '[a]s a minimum, a pleader must set forth concisely the facts upon which [a] cause of action is based.' ").

Joel claims that paragraph nine of the complaint[7] is not sufficiently specific because it does not include details as to "what manner or manners the aforesaid aspects of accounting, as practiced by plaintiff, distinguish them from any other commonly practiced aspects of accounting . . . ." Defendants' memorandum at 6. The court fails to see how this is relevant to the defendants' defense preparations.[8] Because allegations in the complaint allow the defendants to prepare a defense to the plaintiff's claims, the complaint is sufficiently specific, and the objections asserting otherwise are overruled.

### III. *No Part of the Complaint Need Be Stricken for Being Scandalous and Impertinent*

Under Pennsylvania Rule of Civil Procedure 1028(a)(2), a party may object to a pleading's inclusion of "scandalous or impertinent matter." "Scandalous or impertinent matter" is defined as "allegations . . . immaterial and inappropriate to the proof of the cause of action." *Common Cause/Pennsylvania v. Commonwealth,* 710 A.2d 108, 115 (Pa. Commw. 1998) (citing *Department of Environmental Resources v. Peggs Run Coal Co.,* 55 Pa. Commw. 312, 423 A.2d 765 (1980)). Pennsylvania courts have been restrained in striking scandalous and impertinent pleadings, however:

7. Paragraph nine of the complaint states that Jerry taught Joel about his proprietary methods of "bank reconciliation, payroll tax preparation, corporate and personal tax return preparation, organizing and setting up clients' files, indexing work papers, analyzing of general ledger accounts, preparing financial statements, pension plans, tax planning for year-end cash basis taxpayers, client scheduling and client billing."

8. To the extent that the defendants are seeking details as to the basis for the plaintiff's trade secrets claim, the court notes that this claim appears to be based on Joel's alleged copying of the plaintiff's customer list. See complaint at ¶¶62-65. Even if this were not the case, however, paragraph nine is sufficiently detailed to allow the defendants to prepare a defense.

"[T]here is some authority for the proposition that, even if the pleading of damages was impertinent matter, that matter need not be stricken but may be treated as 'mere surplusage' and ignored. . . . Furthermore, the right of a court to strike impertinent matter should be sparingly exercised and only when a party can affirmatively show prejudice." *Commonwealth, DER v. Hartford Accident and Indemnity Co.,* 40 Pa. Commw. 133, 137-38, 396 A.2d 885, 888 (1979). (citations omitted)

The defendants argue that the portions of the complaint alleging stock ownership by Joel and Yager are irrelevant and must be stricken. While the court is unsure of Yager's relevance, there is no evidence that these allegations prejudice the defendants in any way. As a result, the objection is overruled.

## CONCLUSION

The plaintiff's breach of contract and conversion claims are legally insufficient, and the objections thereto have been sustained. The remaining objections are without merit and are overruled.

## ORDER

And now, June 14, 2001, upon consideration of the preliminary objections of defendants Joel D. Goldstein CPA, P.C., Joel D. Goldstein as president of Joel D. Goldstein CPA, P.C. and Joel D. Goldstein, individually, to the complaint of J. Goldstein and Company P.C., and the plaintiff's response thereto, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed as follows:

(1) The preliminary objections asserting that the plaintiff's claims for breach of contract and conversion are legally insufficient are sustained;

(2) The remaining preliminary objections are overruled; and

(3) The plaintiff is directed to file an amended complaint within 20 days of the date of entry of this order.